DuPONT GLORE FORGAN INCORPORATED et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY et al., Defendants and Third-Party Plaintiffs,

v.

UNITED STATES of America, Third-Party Defendant.

No. 73 Civil 2447.

United States District Court, S. D. New York.

March 23, 1977.

Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for plaintiffs; Eugene H. Nickerson, Robert M. Heller, Michael S. Oberman, Greg A. Danilow, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants and third-party plaintiffs; Guy Miller Struve, Hiram D. Gordon, L. Gordon Harriss, New York City, of counsel.

Daniel R. Murdock, Acting U. S. Atty., S. D. N. Y., New York City, for United States; William G. Ballaine, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs commenced this class action to recover communications excise taxes which they allege were overcollected by defendants, acting as statutory collecting agents for the government. The plaintiffs are users of "Centrex" systems,[1] a form of telephone service used primarily by businesses and other large organizations, which permits communication between different telephones within one office as well as outside communications. The defendants are the American Telephone and Telegraph Co. ("AT&T") and twenty-three affiliated operating companies. The defendants have served a third-party complaint seeking recovery from the United States in the event plaintiffs prevail in their action.

Section 4251 of the Internal Revenue Code of 1954 [2] ("the Code") imposes an excise tax on telephone and other communications services and facilities.[3] The tax is

---

1. Previously the Court ordered that this suit could be maintained as a class action under Rule 23(b)(3), Fed.R.Civ.P., on behalf of all users of Centrex systems. *duPont Glore Forgan Inc. v. American Telephone & Telegraph Co.*, 69 F.R.D. 481 (S.D.N.Y.1975). That opinion expressly reserved the issue now presented. *Id.* at 489 n. 24.

2. 26 U.S.C. § 4251.

3. In 1970, Congress enacted a ten-year program gradually eliminating the communications excise tax, commencing January 1, 1973. P.L. 91–614, 84 Stat. 1836, § 201(b).

imposed on the person who pays for the service or facility ("taxpayer") but the company providing the service or facility ("collecting agent") is obligated to collect the tax from the taxpayer and remit it to the government.[4] Pursuant to the Excise Tax Reduction Act of 1965,[5] however, no such tax is imposed upon "private communication service" such as intra-office communication by means of Centrex systems, provided that "a separate charge is made for such service."[6]

The complaint contains eight counts.[7] In substance, Counts I, III and V allege that the defendants' failure to make separate charges for intra-office communication service provided by Centrex systems between 1966 and 1972 violated federal statutory and common law fiduciary duties. Counts VII and VIII allege violations of the federal antitrust laws. Counts II, IV and VI allege that the entries on defendants' books for Centrex service satisfied the "separate charge" requirement, as interpreted in a ruling of the Internal Revenue Service,[8] and that therefore plaintiffs were not required to pay the excise tax upon the intra-office communications service provided by Centrex.

The defendants now move for summary judgment only on Counts II, IV and VI upon the ground that these counts assert claims for refund of taxes, which can be maintained only against the United States; alternatively, they seek partial summary judgment on these counts as to those members of the plaintiff class who have not filed administrative claims for refunds.

The United States supports the defendants' motion and in addition has moved for summary judgment on the third-party complaint.

I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Counts II, IV and VI of the complaint allege that "[s]ince the separation of the charges existed on the books of the defendants," the excise tax was not due upon the intra-office communication service, but that nonetheless

defendants collected, or caused to have been collected, a greater amount in excise taxes from plaintiffs and members of the class than they were entitled to collect, or cause to be collected, under the law, and plaintiffs and members of the class were required to pay and did pay to the [defendants] excise taxes which were not in fact due.[9]

The language of the complaint is thus cast solely in terms of a refund of overcollected taxes. Significantly, there is no allegation of breach of statutory or common law duty, or of violations of the antitrust laws, as alleged in the other counts. So, too, there is no dispute that all sums collected from plaintiffs by defendants were timely paid over by them to the United States as required by law. Thus, it is apparent that the issue to be addressed in these counts is essentially the same as would be presented in a tax refund suit: whether or not separate charges were made, which would determine the extent of plaintiffs' liability for the communications tax. However, the

4. 26 U.S.C. §§ 4251(a)(1), 4291, 7501.

5. P.L. 89–44, 79 Stat. 136, § 302.

6. 26 U.S.C. §§ 4251(a), 4252(a), (d).

7. Counts I and II are brought against AT&T on behalf of all users of Centrex systems who were customers of any operating telephone company at any time between January 1, 1966, and December 31, 1972. Counts V, VI, VII and VIII are brought on behalf of the same class against all the defendants. Counts III and IV are brought against AT&T and New York Telephone Company on behalf of all users of Centrex systems who were customers of New York

Telephone Company at any time between January 1, 1966, and December 31, 1972.

8. Rev.Rul. 69–152, 1969–1 Cum.Bull. 289, held that the "separate charge" requirement of § 4252(d) is met where there are telephone company records which identify in precise detail the monthly charges for equipment and service relating to private communication service and such specific detail is furnished to a telephone subscriber upon request, even though the monthly billings to the subscriber do not show charges for private communication service separately.

9. Complaint, ¶¶ 36, 37.

plaintiffs have chosen not to seek a return of the allegedly overcollected tax in a refund suit against the government, but rather have sued the defendants, who collected the tax from them and remitted it to the government. In support of their motion for summary judgment, defendants contend in essence that the tax refund provisions of the Code were intended by Congress to prohibit any suit against collecting agents such as themselves, and that plaintiffs therefore cannot maintain this suit against defendants but must sue the government.

■■■ The question is close and not entirely free from doubt, but the Court is persuaded that an overall view of the tax collection and refund provisions of the Code, and of the mandated role of non-governmental collecting agents such as defendants, shows that aggrieved taxpayers such as plaintiffs must bring their suit against the government. A brief examination of the refund procedures established by the Code is necessary to an understanding of the issues involved. The Code provides that a taxpayer seeking a refund of taxes [10] must first make an administrative claim for refund within three years from the time his return was filed (or two years from the date the tax was paid, whichever is later) or, if no return was filed, within two years from the time the tax was paid.[11] He cannot bring suit until either the refund claim has been acted upon or six months have

elapsed since it was filed.[12] In no event can suit be brought more than two years after the claim has been disallowed.[13] Refund suits can be brought only in accordance with these procedures,[14] which serve two functions. First, they afford the Internal Revenue Service an opportunity to investigate tax claims and resolve them without the time and expense of litigation.[15] Second, they protect the Treasury by providing strict limitations periods for tax refund suits.[16]

■■■ Section 7422 of the Code,[17] upon which defendants rely, is persuasive evidence that an action against the government in accordance with these provisions of the Code was intended to be the exclusive remedy for a tax refund. Section 7422 reads, in relevant part:

(a) No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

.     .     .     .     .

---

**10.** The alternate method of contesting tax liability by appealing a notice of deficiency to the Tax Court is unavailable in the case of these excise taxes. 26 U.S.C. §§ 6211–14; *Flora v. United States*, 362 U.S. 145, 175 n. 38, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); 9 J. Mertens, Law of Federal Income Taxation § 50.08 (Zimet Rev. 1974).

**11.** 26 U.S.C. §§ 6511(a), 7422(a).

**12.** 26 U.S.C. § 6532(a)(1).

**13.** *Id.*

**14.** *See, e. g., United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); *Lewis v. Sandler,* 498 F.2d 395, 399–400 (4th Cir. 1974); *Scovill Mfg. Co. v. Fitzpatrick*, 215 F.2d 567, 569 (2d Cir. 1954); *United States v. Standard Oil Co.*, 158 F.2d 126, 129 (6th Cir. 1946), *cert. denied*, 331 U.S. 836,

67 S.Ct. 1519, 91 L.Ed. 1849 (1947) ("Meticulous compliance by a taxpayer with conditions prescribed for the recovery of taxes paid must appear before the taxpayer can recover.") *See also* cases cited n. 39 *infra*.

**15.** *See United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); *Herrington v. United States*, 416 F.2d 1029, 1032 (10th Cir. 1969); *Lemoge v. United States*, 378 F.Supp. 228, 232 (N.D.Cal. 1974).

**16.** *See United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 71, 53 S.Ct. 278, 77 L.Ed. 619 (1933); *cf. Burnett v. New York Central R. R.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965).

**17.** 26 U.S.C. § 7422.

(f)(1) A suit or proceeding referred to in subsection (a) may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative. . . .

The explicit language of this section—any suit "for the recovery of any internal revenue tax alleged to have been erroneously or illegally collected"—exactly describes Counts II, IV and VI of the complaint in this case.[18] Thus under this section plaintiffs' suit "may be maintained only against the United States," and only in conformity with the procedures outlined above.

■ Plaintiffs contend, however, that the statutory refund procedures apply only in cases where a taxpayer seeks a refund of taxes *from the government.* They contend that their dispute, on the contrary, is solely with the defendants, who they claim illegally collected taxes from them without authority because the separation of charges existed. They argue that section 7422(f) was enacted solely to ensure that all suits brought against the government name the United States as defendant rather than the district director of internal revenue, as formerly permitted,[19] and that its effect is not to "prohibit an action against a private party which wrongfully collects monies under the guise of taxes." Thus, they claim, the fact that the provisions of the Code are "exclusive" in suits against the government in no way affects plaintiffs' right to bring suit against these defendants, without reference to the statutory refund procedures.

However, the language of section 7422 is unambiguous in requiring that a suit for the recovery of "erroneously or illegally" overpaid taxes may be brought only against the United States. Further, there is no indication that a remedy against private collecting agents such as defendants has ever been considered available. The legislative history of section 7422(f), while not directly on point, does not reveal that Congress contemplated that a tax refund suit might be brought against private collecting agents. To the contrary, the Senate report accompanying the bill referred only to the statutory procedures:

> The bill does away with tax refund suits against collection officers, but retains the provisions of present law which permit these suits to be brought directly against the United States . . ..
>
> . . . . .
>
> Under present law a taxpayer seeking a refund of an overpayment of tax generally may sue the United States directly or may bring his action against the district director to whom the tax was paid.
>
> . . . .
>
> . . . . .
>
> Although this bill abolishes the right of action by a taxpayer against a Government employee serving as the tax collector, this is done only because other adequate remedies either are already available, or are being made available by this bill, for the recovery of illegal collections.[20]

■ Moreover, there is no case in which an action such as the one plaintiffs have brought has been allowed. Indeed, in the only similar cases suits by excise taxpayers against collecting agents such as defendants have been dismissed.[21] And it has long

---

18. *See* p. 1300 *supra.*

19. *See* S.Rep. No. 1625, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S. Code Cong. & Admin. News 3676, 3681–82; *see generally Flora v. United States*, 362 U.S. 145, 151–57, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *United States v. Kales*, 314 U.S. 186, 197–200, 62 S.Ct. 214, 86 L.Ed. 132 (1941).

20. S.Rep. No. 1625, 89th Cong., 2d Sess. (1966) *reprinted in* 1966 U.S. Code Cong. & Admin. News 3676, 3677, 3681.

21. There are three previous cases, all in the Northern District of Illinois. *Econ, Inc. v. Illinois Bell Telephone Co.*, 351 F.Supp. 1087 (N.D.Ill.1972); *Rose v. American Airlines, Inc.*, 331 F.Supp. 77 (N.D.Ill.1971); *Agron v. Illinois Bell Telephone Co.*, 325 F.Supp. 487 (N.D.Ill. 1970), *aff'd in part and rev'd in part*, 449 F.2d 906, 914 (7th Cir. 1971), *cert. denied*, 405 U.S. 954, 92 S.Ct. 1171, 31 L.Ed.2d 231 (1972). While plaintiffs and defendants herein have debated at length the ground of decision in these cases, it is clear that in none of them was the suit allowed. State law cases have also indicated that a collecting agent is not liable to the taxpayer for an illegal collection when he has paid the taxes over to the government. *See John L. Burns, Inc. v. Gulf Oil Corp.*, 268

been held, without qualification, that "[t]he remedy so given [by the Code] is exclusive, and no other remedy can be substituted for it." [22] The exclusive nature of this remedy has consistently been protected by both Congress and the courts. For example, injunctions and declaratory judgments in tax cases are expressly forbidden by statute.[23] And the courts have repeatedly prevented any effort to circumvent, by whatever ingenious device, "the harmony of our carefully structured twentieth century system of tax litigation." [24] In short, what emerges from cases, statutes and legislative history alike is a purpose to channel all tax litigation into the structure provided by the Code. The total lack of mention of any remedy such as plaintiffs seek, combined with the oft-stated intent to make the statutory procedures exclusive, strongly suggests that section 7422(f) means precisely what it says, and that plaintiffs may maintain a tax refund claim only against the government and not against collecting agents.

■ Moreover, litigation directed against collecting agents might significantly impair the protections which the refund provisions of the Code were intended to afford the government. Many members of the class plaintiffs represent have not filed refund claims, and even those members of the class who have filed refund claims have not yet brought a refund suit against the government. If the plaintiffs prevail, and the defendants in turn are allowed to recover from the government as they seek to do by their third-party complaint, the plaintiff taxpayers will have succeeded in avoiding the strict procedural requirements for obtaining refunds. In effect they will have obtained a refund of taxes from the government without giving the Internal Revenue Service an opportunity to consider their claims administratively, and without being subject to the statutes of limitations imposed by the Code.[25] This would clearly negate the Congressional purpose in enacting the refund provisions of the Code.

If the government is not made a party to a suit against a collecting agent, the problems are just as complex. In such a case the Court would be forced to adjudicate potentially complicated tax questions, perhaps of some public importance, in a litigation between private parties, without the benefit of the participation of the Internal Revenue Service. The government, of

---

F.Supp. 222, 223 (N.D.Ga.1967); *Kesbec, Inc. v. McGoldrick,* 278 N.Y. 293, 297, 16 N.E.2d 288, 290 (1938). This accords with the common law rule that an agent acting for a disclosed principal who receives money by mistake is not liable to the payor if he has paid the money over to his principal without notice of the payor's claim. *See, e.g., Hooper v. Robinson,* 98 U.S. 528, 540–41, 25 L.Ed. 219 (1878); *Mountain Lumber Co. v. Davis,* 11 F.2d 219, 221 (2d Cir.), *cert. denied,* 271 U.S. 674, 46 S.Ct. 488, 70 L.Ed. 1145 (1926); Restatement (Second) of Agency, § 339, comment f (1958).

**22.** *Snyder v. Marks,* 109 U.S. 189, 193, 3 S.Ct. 157, 160, 27 L.Ed. 901 (1883). *See Cheatham v. United States,* 92 U.S. 85, 88, 23 L.Ed. 561 (1875) ("That system is intended to be complete"); *Kent v. Northern California Regional Office of Am. Friends Serv. Comm.,* 497 F.2d 1325, 1328 (9th Cir. 1974) ("the exclusive methods for litigating federal tax liability"); *Poretto v. Usry,* 295 F.2d 499, 501 (5th Cir. 1961), *cert. denied,* 369 U.S. 810, 82 S.Ct. 687, 7 L.Ed.2d 612 (1962) ("mandatory and exclusive").

**23.** 26 U.S.C. § 7421, 28 U.S.C. § 2201. *See also* 28 U.S.C. § 2680(c) (Tort Claims Act).

**24.** *Flora v. United States,* 362 U.S. 145, 176, 80 S.Ct. 630, 647, 4 L.Ed.2d 623 (1960) (payment of entire tax required before refund suit maintainable). *See also Lewis v. Sandler,* 498 F.2d 395 (4th Cir. 1974) (civil rights action); *Kent v. Northern California Regional Office of Am. Friends Serv. Comm.,* 497 F.2d 1325 (9th Cir. 1974) (interpleader by trustees directed to pay over tax to government if it is adjudicated constitutional); *Bohn v. United States,* 467 F.2d 1278 (8th Cir. 1972) (suit challenging allegedly illegal seizure of property); *United States v. Freedman,* 444 F.2d 1387 (9th Cir.) *cert. denied,* 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971) (motion for return of property under Rule 41(e), Fed.R.Crim.P.); *Econ, Inc. v. Illinois Bell Telephone Co.,* 351 F.Supp. 1087 (N.D.Ill.1972) (suit against collecting agent); *England v. United States,* 164 F.Supp. 322 (E.D.Ill.), *aff'd,* 261 F.2d 455 (7th Cir. 1958) (tort suit based upon alleged fraud of government agents).

**25.** The taxes at issue were collected during the years 1966–1972. The refund claims filed by plaintiffs were apparently filed in July, 1973, over seven years after the first contested taxes were collected. *See* p. 1301 *supra.*

course, has a vital interest not only in collecting taxes that are due but also in assuring that refunds are made only to those entitled to them.[26] To permit private litigation for the recovery of tax refunds may defeat that purpose. In sum, the consequences of allowing plaintiffs to maintain this suit are a far cry from "the harmony of our carefully structured twentieth century system of tax litigation,"[27] and are persuasive evidence that Congress did not intend to permit a suit such as plaintiffs'.

▮ Plaintiffs press, however, that their suit is authorized by the Code itself, relying upon section 6415(c),[28] which provides:

> In case any person required . . . to collect any [transportation or communications excise] tax shall make an overcollection of such tax, such person shall, upon proper application, refund such overcollection to the person entitled thereto.

On its face this section does not create a cause of action for recovery of an overcollection by a taxpayer from a collecting agent. Plaintiffs argue, however, that this lawsuit itself is a "proper application" and that under section 6415(c) the defendants must refund to plaintiffs any amount overcollected. However, this section is applicable only to transportation and communica-

tions excise taxes, although there are other situations in which federal taxes are collected by third parties acting as collecting agents for the government.[29] Plaintiffs have suggested no reason why, despite the fact that the statutory tax refund procedures were generally intended to be exclusive, Congress should have singled out those who collect the transportation and communications excise taxes and imposed liability for refunds of overcollections solely upon them, and not upon other collecting agents.

Moreover, while there is little in the legislative history to illuminate the purpose of section 6415(c), such as there is supports defendants' position that section 6415(c) does not authorize this suit. The purpose of section 6415 as a whole[30] is apparently to provide mechanisms for lessening the burden of administering a tax which is imposed on a large number of taxpayers paying a relatively small amount of tax on each taxable transaction. It eliminates the necessity of individual taxpayers filing refund claims for each overpayment of an excise tax by allowing refunds to be made to the collecting agent for all of its customers, and it lessens the number of refund claims required by allowing a collecting agent in certain cases to take a credit upon a subsequent return instead of filing a refund

26. *Cf. Cory Corp. v. Sauber*, 284 F.2d 767, 773 (7th Cir. 1960), *cert. denied*, 366 U.S. 935, 81 S.Ct. 1659, 6 L.Ed.2d 847 (1961).

27. *See* n. 24 *supra*.

28. 26 U.S.C. § 6415(c).

29. Perhaps the best-known such situation is the withholding of federal income and Federal Insurance Contributions Act taxes by a taxpayer's employer. *See* 26 U.S.C. §§ 3102, 3402.

30. Section 6415 reads as follows:
(a) Credit or refund of any overpayment of tax imposed by section 4251, 4261, or 4271 may be allowed to the person who collected the tax and paid it to the Secretary or his delegate if such person establishes, under such regulations as the Secretary or his delegate may prescribe, that he has repaid the amount of such tax to the person from whom he collected it, or obtains the consent of such person to the allowance of such credit or refund.

(b) Any person entitled to a refund of tax imposed by section 4251, 4261, or 4271 paid, or collected and paid, to the Secretary or his delegate by him may, instead of filing a claim for refund, take credit therefor against taxes imposed by such section due upon any subsequent return.
(c) In case any person required under section 4251, 4261, or 4271 to collect any tax shall make an overcollection of such tax, such person shall, upon proper application, refund such overcollection to the person entitled thereto.
(d) Any person making a refund of any payment on which tax imposed by section 4251, 4261, or 4271 has been collected may repay therewith the amount of tax collected on such payment.
Section 4251 imposes the communications excise tax; sections 4261 and 4271 impose excise taxes upon air transportation of persons and property, respectively.

claim. At the same time the statute ensures that the ultimate economic benefit of any refund or credit is passed on to the taxpayer.

Section 6415(c) is part of this mechanism. The predecessor of section 6415(c) indicated that a taxpayer could get a refund from a collecting agent "upon proper application" only in situations when the collecting agent was entitled to take a credit upon a subsequent return without filing for a refund.[31] Treasury regulations first promulgated in 1932, when the communications tax was enacted in its present form, and still applicable today, make it clear that a credit may be taken only when the overcollection was due to a "clerical or mechanical error." In all other cases, the regular refund procedure must be followed.[32] While the precise form of section 6415(c) differs from its predecessor statute, the legislative history of the Code indicates that no substantive change in the law was intended thereby.[33] Thus, it appears that section 6415(c) is intended merely to simplify the procedures for adjustment of minor errors in tax collection, and not to carve out sub silentio an exception to the orderly structure of tax litigation by allowing persons seeking to litigate major and disputed questions of tax law to bypass the normal refund procedure.[34]

Thus, the overall structure of the refund provisions of the Code negates plaintiffs' efforts to seek a tax refund from defendants. However, while conceding that the arguments against allowing this suit would have "considerable force" in an "ordinary" overcollection suit,[35] plaintiffs contend that their case is extraordinary because the tax-

---

**31.** *See* Internal Revenue Code of 1939, § 1715(d)(2) (made applicable to the communications tax by Internal Revenue Code of 1939, § 3473):

In the case of any overpayment or overcollection of any tax imposed by this chapter, the person making such overpayment or overcollection may take credit therefor against taxes due upon any return, and shall make refund of any excessive amount collected by him upon proper application by the person entitled thereto.

*See also* Revenue Act of 1932, 47 Stat. 169, § 774; Revenue Act of 1926, 44 Stat. 9, § 1120; Revenue Act of 1918, 40 Stat. 1057, § 1310(a).

**32.** Treas.Reg. 42, Art. 51, 52 (1932); Treas.Reg. 42, §§ 130.77, 130.78 (1942). As applicable today the regulations read:

Every person required to pay tax, or to collect and pay tax, who overpays from his own funds, tax on any monthly return may, in cases where the overpayment was the result of a clerical or mechanical error, take credit for such overpayment against the tax due on a subsequent monthly return.

.   .   .   .   .

A claim for abatement or refund of taxes alleged to have been erroneously or illegally assessed or paid  .   .   . shall be prepared on Form 843 and presented to the collector of internal revenue for the district in which the amount claimed was assessed or paid. (See section [6511] of the Code.)

Although these regulations were promulgated under the 1939 Code they remain in effect today. 26 C.F.R. § 301.6415–1 (1976); *Id.* § 49.0–4; Treas.Dec. 6091, 1954–2 Cum.Bull. 47, § 1; *see* Rev.Rul. 70–13, 1970–1 Cum.Bull. 273.

**33.** H.R.Rep. No. 1337, 83d Cong., 2d Sess. (1954); S.Rep. No. 1662, 83d Cong., 2d Sess. (1954), *both reprinted in* 1954 U.S. Code Cong. & Admin. News, 4560, 5231.

**34.** This was made explicit in an early version of the regulations under a predecessor of § 6415(c), section 1310(a) of the Internal Revenue Act of 1918, 40 Stat. 1057, as it applied to the dues and admissions excise taxes, for which the collection and refund procedures were essentially identical to the communications tax. These regulations read in part as follows:

It should be noted that the right to claim a credit exists only in the case of "overpayment or overcollection." These words are confined in general to cases where, as the result of some clerical or mechanical error, an excess amount has been collected or paid.

.   .   .   In all cases where tax has been collected and such collections are alleged to be *illegal or erroneous* it will be necessary for the person so paying the tax to file claim for refund  .   .  .. Section 1310(a) of the Act [the predecessor of § 6415(c)] does not authorize the individuals, corporations, partnerships, or associations receiving such tax to make refund nor to adjust the claim. The only adjustment authorized under this section of the Act being limited to cases of *overpayment or overcollection* of tax.

Treas.Reg. 43, Art. 65, 66 (1921) (emphasis original).

**35.** Transcript of argument, January 25, 1977, at 29–30.

es were allegedly collected by defendants without probable cause to do so. Plaintiffs further contend that preventing a taxpayer from maintaining suit against a collecting agent would be unfair to the taxpayer, since the collecting agent could conceal from the taxpayer facts entitling him to a refund until after the lapse of the period for filing a refund claim, thus barring altogether any recovery. However, as noted above, Counts II, IV and VI of the complaint are pleaded merely as claims for refund of overcollected taxes. They contain no allegation of lack of probable cause to collect the taxes, nor of any concealment of facts from the plaintiffs. Thus, the short answer to plaintiffs' argument is that, whatever its merits, it is not relevant to the claim upon which plaintiffs seek recovery from the defendants.[36]

Moreover, the interference with the orderly administration of the revenue laws is great even under plaintiffs' theory. It must be remembered that the defendants did not choose the role of collecting agents. The duty to collect the tax was imposed upon defendants by statute—enforceable, if necessary, by criminal liability [37]—for the convenience of the United States. Because the communications tax is imposed upon literally millions of separate transactions each year, its efficient administration requires that the defendants collect the tax as they do. In so collecting the tax and paying it over to the government the defendants act merely as agents for the United States.[38]

If plaintiffs' theory were accepted, however, the defendants would be placed in the position of having to collect taxes at their peril. Allowing suits such as plaintiffs' might lead to situations in which the collecting agent would be required to refund taxes to the taxpayer but could not recover them from the government. This is so because the procedures which must be followed in tax refund suits, outlined above, constitute a limited waiver of sovereign immunity and must therefore be fulfilled before any suit can be brought against the United States.[39] For example, if the taxpayer is permitted to sue the collecting agent after the statute of limitations for filing refund claims with the government has expired, the collecting agent may not be able to obtain a refund from the government of the amount it is required to pay the taxpayer, since, not being on notice of the taxpayer's claim within the limitations period, it would not have made a timely refund claim. It is unlikely that Congress, in requiring the defendants to collect taxes on behalf of the government, intended that they would have to defend lawsuits on behalf of the government or even bear themselves the burden of a tax imposed upon their customers.

The Court does not hold that an action can never be maintained against a telephone company for alleged wrongs arising out of the performance of its duties as collecting agent for federal taxes. In fact, the defendants, while denying plaintiffs' charges of wrongful conduct, have not chal-

---

**36.** In addition, plaintiffs' basic legal analysis is based primarily on the language and history of various sections of the Code, principally sections 7422(f) and 6415(c). It does not depend on the presence or absence of probable cause or concealment, but rather on defendants' status as collecting agents. In fact, the only authority cited by plaintiffs in support of the distinction between a case where taxes were collected without probable cause and a case where probable cause exists, 28 U.S.C. § 2006, is patently irrelevant. *See* n. 46 *infra.* Thus, adopting plaintiffs' reasoning in this suit would permit a wide range of lawsuits to be brought against collecting agents whether or not probable cause or concealment existed, contrary to the exclusive refund provisions of the Code.

**37.** 26 U.S.C. §§ 6672, 7202.

**38.** *Cf. United States v. Washington Toll Bridge Auth.,* 307 F.2d 330, 334–35 (9th Cir. 1962), *cert. denied,* 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963); *Sharp & Dohme, Inc. v. United States,* 144 F.2d 456, 458 (3d Cir. 1944).

**39.** *See, e. g., United States v. Michel,* 282 U.S. 656, 658, 51 S.Ct. 284, 75 L.Ed. 598 (1931); *Kings County Savings Institution v. Blair,* 116 U.S. 200, 205–06, 6 S.Ct. 353, 29 L.Ed. 657 (1886); *United States v. Rochelle,* 363 F.2d 225, 230–31 (5th Cir. 1966) (Waterman, J.).

lenged plaintiffs' right to maintain this suit upon the other counts of their complaint. Where, however, the gravamen of the complaint is merely that a tax was collected which was not owed, and where the money was duly paid to the government by the collecting agent, allowing the taxpayer to sue the collecting agent when he collected the tax "erroneously or illegally" would unduly interfere with the orderly administration of the internal revenue laws. In such a case the taxpayer should be required to avail himself of his statutory remedies against the government, which is the real party in interest. As the Court of Appeals for the Ninth Circuit said in another case involving the telephone excise tax:

> [A]llowing [this suit] . . . could disrupt the orderly procedures created by Congress for handling tax litigation. The administration of the fiscal needs of the United States is undoubtedly a monumental task and is of vital importance to the nation. Congress has provided a system in which judicial review of tax liability can be obtained. In *Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), the Supreme Court recognized that the procedures for obtaining judicial review of tax liability were designed to be the exclusive methods for litigating federal tax liability. In the instant case the taxpayers could have contested their tax liability . . . in a refund suit . . . .. The procedure devised by the present taxpayers is outside the exclusive scheme provided by Congress.[40]

Accordingly, the defendants' motion for summary judgment on Counts II, IV and VI of the complaint is granted.

## II. THIRD–PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

With the dismissal of Counts II, IV and VI of the complaint, the remaining counts of the complaint are all grounded upon the allegedly tortious conduct of defendants. The defendants' third-party complaint against the government alleges that defendants acted "as agents and fiduciaries for the United States of America in collecting [the telephone excise] taxes and paying them over to the United States of America" and that the United States therefore "is liable to defendants" for any amount defendants may be required to pay to plaintiffs on Counts I through VI.[41] Whether the third-party complaint is read to allege a claim for refund of taxes under section 6415(a) of the Code[42] or a claim against the government sounding in tort, it must be dismissed for lack of jurisdiction since the government has not waived its sovereign immunity from suit as to the subject matter of the remaining counts of the complaint.[43]

In Counts I, III and V of the complaint, the remaining counts to which the third-party complaint is applicable, plaintiffs do not seek a refund of overcollected taxes. Their claim is not that defendants collected more taxes than were properly due, but rather that defendants' allegedly tortious acts increased plaintiffs' tax liability. Under plaintiffs' theory on these counts the United States was legally entitled to all the revenues it received. Should defendants be held liable to plaintiffs under these counts, the recoverable damages would be based upon defendants' breach of duty owed to plaintiffs, and the damages could include items in addition to taxes which plaintiffs paid because of defendants' alleged failure to make a "separate charge." Since any liability of defendants on these counts would thus not be in the nature of a repayment of taxes, they could have no claim against the government "for the recovery of any internal-revenue tax," and there is

---

**40.** *Kent v. Northern California Regional Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1328 (9th Cir. 1974).

**41.** Third-Party Complaint, ¶¶ 4, 5. No liability over is asserted on Counts VII and VIII, the antitrust counts.

**42.** *See* n. 30 *supra*.

**43.** Indeed, defendants virtually conceded as much at argument of this motion. Transcript of argument, January 29, 1977, at 22–23.

thus no jurisdiction under Title 28, United States Code, section 1346(a)(1).

■ Nor is there subject matter jurisdiction of the third-party claim if it is intended to assert a claim against the United States as a joint tortfeasor. Specifically excluded from the operation of the Federal Torts Claims Act is "[a]ny claim arising in respect of the assessment or collection of any tax." [44] Any claim by defendants against the United States in this case "aris[es] in respect of" the performance of their function as collecting agents. There is thus no jurisdiction over such a claim.[45] Nor is there jurisdiction under Title 28, United States Code, section 2006, which applies only to a "revenue officer" and not to a collecting agent such as defendants.[46] Since there is no jurisdictional basis for the third-party claim insofar as it relates to the remaining counts of the complaint to which it is applicable, the motion of the United States for summary judgment dismissing the third-party complaint is granted.

It is so ordered.

---

**44.** 28 U.S.C. § 2680(c).

**45.** *Morris v. United States*, 521 F.2d 872, 874 (9th Cir. 1975); *Broadway Open Air Theatre v. United States*, 208 F.2d 257 (4th Cir. 1953); *Paige v. Dillon*, 217 F.Supp. 18, 20 (S.D.N.Y. 1963). Although jurisdiction is usually found to exist over third-party claims on principles of ancillary jurisdiction, *see* 6 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 1444 (1971), this is not true where, as here, a waiver of sovereign immunity is at issue. *Id.* § 1450 at 275–76; *see generally United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951).

**46.** It is clear that the term "collector" in 28 U.S.C. § 2006 does not refer to any person who collects a tax, but rather to the statutory position of collector of internal revenue, later known as the district director of internal revenue. *See* Internal Revenue Code of 1939, § 3940 et seq. *See also Agnew v. Haymes*, 141 F. 631, 640 (4th Cir. 1905) ("The protection afforded by [§ 2006] is confined to officers of the revenue"); *cf. John J. Casale, Inc. v. Pedrick*, 72 F.Supp. 848, 850 (S.D.N.Y.1947) ("Any person required to pay *the collector* a tax . . . is a taxpayer and this is so though he must first collect such tax from another taxpayer") (emphasis supplied); S.Rep. No. 1625, 89th Cong., 2d Sess. (1966) *quoted* p. 1302 *supra*, 1966 U.S. Code Cong. & Admin. News 3676.