United States Court of Appeals,

Fifth Circuit.

No. 96-10720.

Ernesto D. SIGMON, individually and on behalf of all others similarly situated;  William Gregory Hassler, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

SOUTHWEST AIRLINES COMPANY, Defendant-Appellee.

April 28, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before DUHÉ, BENAVIDES and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

This appeal requires us to determine whether airline passengers can bring suit against an airline to obtain refunds of amounts erroneously collected by the airline as federal excise taxes.  We conclude that they cannot.

In late 1995, Ernesto Sigmon and William Hassler each purchased an airline ticket from Southwest Airlines Company ("Southwest") for travel in 1996.  In addition to the ticket price, Southwest included a 10% charge on each ticket.  Southwest added the 10% charge to all tickets sold on or before December 31, 1995, including tickets for travel in 1996.  Southwest charged this amount in expectation that Congress would renew a longstanding excise tax on domestic airline tickets.[1]  *See* 26 U.S.C. § 4261.

---

[1]The parties entered into the following stipulation:

> Throughout the period from July 1995 through January 1996, Southwest Airlines knew that the ten percent (10%)

Congress had repeatedly renewed the airline ticket excise tax provision at the eleventh hour. *See* Pub.L. No. 88-52, § 3(a)(3), 77 Stat. 72 (1963); Pub.L. No. 88-348, § 2(a)(3), 78 Stat. 237 (1964); Pub.L. No. 89-44, § 303(a), 79 Stat. 136, 148 (1965); Pub.L. No. 100-223, § 402(a)(1), 101 Stat. 1486, 1532 (1987); Pub.L. No. 101-508, § 11213(d)(1), 104 Stat. 1388-435 (1990). Southwest's expectation that the tax once again would be renewed was disappointed when President Clinton vetoed the bill containing the airline ticket excise tax. The tax expired on December 31, 1995. Although Congress reenacted the tax nearly nine months later, the tax was not given retroactive application. Pub.L. No. 104-188, § 1609(b), 110 Stat. 1755, 1841 (1996).[2]

When the excise tax provision expired at the end of 1995,

---

excise tax Southwest Airlines was required by 26 U.S.C. § 4261 to collect on tickets sold by Southwest Airlines for travel on or before December 31, 1995, had not been extended by Congress to apply to tickets sold for travel on or after January 1, 1996, and that no statute in force at any time in 1995 required an excise tax to be collected on tickets sold by Southwest Airlines for travel on or after January 1, 1996. Nevertheless, based on Southwest Airlines' expectation throughout the second half of 1995 that Congress and the President would extend the application of 26 U.S.C. § 4261 or otherwise enact a statute requiring the collection of a ten percent (10%) excise tax on tickets sold by Southwest Airlines for travel on or after January 1, 1996, Southwest Airlines collected from customers who purchased tickets in 1995 for travel on or after January 1, 1996, an amount equal to the ten percent (10%) excise tax that Southwest Airlines was required by 26 U.S.C. § 4261 to collect on tickets sold by Southwest Airlines for travel on or before December 31, 1995.

[2]The tax expired again on December 31, 1996, and was reenacted on February 28, 1997. Pub.L. No. 105-2, § 2(b)(1), 111 Stat. 4 (1997).

Southwest had already collected the tax on tickets sold during 1995 for travel during 1996. Ultimately, the taxes collected on these tickets, including those purchased by putative class representatives Sigmon and Hassler,[3] were not owed; the excise tax provision in effect in 1995 imposed the tax based on the date of travel rather than the date of purchase.[4] The total amount of erroneously collected excise taxes at issue is unclear; Southwest remitted approximately $18 million to the IRS in January of 1996 for all excise taxes collected during December of 1995.

Sigmon and Hassler allege that they requested refunds from Southwest and that Southwest denied their requests. They brought a class action suit in state court, alleging common-law causes of action for fraud, "for money had and received," and for conversion. Southwest removed the suit to federal district court. Sigmon and Hassler did not move to remand the case to state court. In addition to actual damages, they seek attorneys' fees and costs, exemplary damages, and pre- and post-judgment interest.

Shortly after removal, Southwest filed a motion to dismiss the plaintiffs' complaint. In response, plaintiffs moved for leave to amend their complaint; the district court granted the motion. The plaintiffs' amended complaint asserted an implied cause of action

---

[3]The case was dismissed before any class was certified.

[4]When Congress reenacted the tax in February of 1997, it solved the dilemma faced by Southwest and other airlines in 1995 as a result of the previous lapse. Congress added Section 4261(g)(1)(B), which applies the excise tax to tickets purchased before the expiration of the tax for transportation beginning after the expiration date. Pub.L. No. 105-2, § 2(b)(1), 111 Stat. 4 (1997).

3

under 26 U.S.C. § 6415(c) and alleged that Southwest had failed to remit to the IRS the amounts collected as excise taxes.[5] After plaintiffs filed their amended complaint, Southwest moved to have its motion to dismiss be treated as a motion for summary judgment. The district court granted Southwest's motion and allowed the parties to submit summary judgment evidence.

On May 23, 1996, the district court granted summary judgment in favor of Southwest on three grounds: (1) the Internal Revenue Code, 26 U.S.C. § 7422, preempts the plaintiffs' claims; (2) the Airline Deregulation Act, 49 U.S.C. § 41713, preempts the plaintiffs' claims; and (3) 26 U.S.C. § 6415 does not create an implied cause of action in favor of the plaintiffs.

## I.

On appeal, Sigmon and Hassler assert that the district court lacked subject-matter jurisdiction because they asserted only state common-law causes of action against Southwest Airlines in their state-court petition. Southwest Airlines removed to federal court

---

[5]Although the parties fought long and hard in the district court about whether Southwest actually remitted the collected amounts to the IRS, the appellants do not pursue this line of argument on appeal. Rather, they argue that regardless of whether the collected funds were remitted to the IRS, Southwest is not entitled to protection from suit under the Internal Revenue Code. Even if appellants had raised the issue, however, it appears that Southwest did remit the taxes it collected, although it took credits and deductions against those amounts and remitted its net tax liability. In support of its motion for summary judgment, Southwest submitted the affidavit of Rhonda Heatley, Southwest's Senior Tax Accountant, who swore that "all excise tax proceeds collected by Southwest Airlines Company on or prior to December 31, 1995 have been remitted to the United States government" and that "Southwest Airlines Company no longer has possession or control of any such monies."

4

on the ground that plaintiffs stated federal claims under 26 U.S.C. §§ 4261 and 6415. The plaintiffs' state-court petition cites 26 U.S.C. § 6415(c), which they now claim provides them with an implied federal cause of action. We need not decide whether the reference to Section 6415(c) in the state-court petition is sufficient to create a federal question, because plaintiffs' amended federal complaint clearly states an implied cause of action under 26 U.S.C. § 6415(c). This claim constitutes a federal question and thus gives the district court original jurisdiction under 28 U.S.C. § 1331.

Although subject-matter jurisdiction is generally assessed as of the time of removal, there is an exception if the plaintiff voluntarily amends his or her complaint after removal to add a federal cause of action, and the case is "tried on the merits without objection." *See Kidd v. Southwest Airlines Co.,* 891 F.2d 540, 547 (5th Cir.1990).[6] In this case, the district court acquired jurisdiction, if it did not already exist, when the plaintiffs amended their federal complaint to include an implied cause of action under federal law. *See id.* at 546 ("[A]lthough [plaintiff's] initial complaint was not removable, [plaintiff's] decision to "throw in the towel' and amend his complaint to state an "unmistakeable federal cause of action' conferred original jurisdiction on the federal court.") (quoting *Bernstein v. Lind-Waldock & Co.,* 738 F.2d 179, 185 (7th Cir.1984)).

---

[6]Summary judgment is equivalent to a trial on the merits for the purpose of this rule. *Id.* at 546 (citations omitted).

5

The district court had discretion to exercise supplemental jurisdiction over plaintiffs' pendent state-law claims. 28 U.S.C. § 1367(a), (c)(3); *see also Cinel v. Connick,* 15 F.3d 1338, 1344 (5th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994). The district court's decision to retain jurisdiction in this case was far from an abuse of discretion, especially given that the court disposed of the plaintiffs' pendent state-law claims based on federal preemption. *Cf. Statland v. American Airlines, Inc.,* 998 F.2d 539, 541 (7th Cir.) (after affirming the district court's conclusion that the Federal Aviation Act did not create an implied cause of action in favor of plaintiffs, the court of appeals exercised supplemental jurisdiction to dispose of plaintiffs' remaining state-law claims based on federal preemption), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 603, 126 L.Ed.2d 568 (1993).

## II.

The Internal Revenue Code governs tax refund suits. Under Section 7422(a) of the Code, a taxpayer[7] who seeks a refund of federal taxes must first make an administrative refund claim with the Secretary of the Treasury. "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary...." 26 U.S.C. § 7422(a). Failing an

---

[7]Airline ticket purchasers, not airlines, are the taxpayers of the airline ticket excise tax. *See* 26 U.S.C. § 4261(d).

administrative resolution, the taxpayer's remedy is to file suit against the government. 26 U.S.C. § 7422(f)(1)("A suit [for erroneously or illegally assessed or collected taxes] may be maintained *only* against the United States ....")(emphasis added); *Kaucky v. Southwest Airlines Co.,* 109 F.3d 365, 370 (7th Cir.1997)("Money collected in error by a lawful agent, public or private, of the [IRS] can be recovered only from the government, because a claim or suit to collect such money is a claim or suit for a tax refund.").

Southwest acts as the government's agent in collecting airline ticket excise taxes. 26 U.S.C. § 4291; *see also Kaucky,* 109 F.3d at 368. Section 7422 protects from lawsuits private entities, like Southwest, that are required by statute to collect taxes for the government under threat of criminal penalty for failure to do so. *DuPont Glore Forgan Inc. v. AT & T,* 428 F.Supp. 1297, 1306 (S.D.N.Y.1977), *aff'd,* 578 F.2d 1366 (2d Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 465, 58 L.Ed.2d 431 (1978).[8]

Although appellants seek the return of amounts collected by Southwest to pay anticipated excise taxes, they argue that the Internal Revenue Code's refund scheme does not apply. The amounts collected, they argue, were not "taxes" because the excise tax

---

[8]Other courts in other contexts have likewise held that if taxpayers seek to compel a refund, they must proceed against the United States rather than against a private tax collector. *See, e.g., Burda v. M. Ecker Co.,* 954 F.2d 434, 439 (7th Cir.1992) (employment tax); *Econ, Inc. v. Illinois Bell Tel. Co.,* 351 F.Supp. 1087, 1089 (N.D.Ill.1972) (communications excise tax); *see also Columbia Marine Servs., Inc. v. Reffet Ltd.,* 861 F.2d 18, 22 (2d Cir.1988).

statute was not reenacted. It is literally true that the amounts collected ultimately were not taxes. For the reasons that follow, however, "we do not think the literal sense is the right sense." *Kaucky,* 109 F.3d at 368.

Appellants advance two hypotheticals in support of their position. Suppose, they posit, a law firm added a 10% surcharge to its fees and called it a "federal excise tax," when no such tax existed. Or what if an airline dreamed up a 5% "carry on luggage tax"? The government would have no interest in the collected funds because they are not really "taxes." The culpable tax collectors would not deserve the protection of Section 7422 because they were not really acting as agents for the government. Southwest, they argue, is no different from their hypothetical tax collectors.

Unlike the defendants in these hypotheticals, however, Southwest was not imposing a make-believe tax, nor did it dream up a surcharge and pocket the money for itself. Southwest was collecting an excise tax that has been part of the airline passenger ticket sales landscape for nearly four decades. Here, it was stipulated that Southwest "expect[ed] throughout the second half of 1995 that Congress and the President would extend the application of 26 U.S.C. § 4261 or otherwise enact a statute requiring the collection of a ten percent (10%) excise tax on tickets sold by Southwest Airlines for travel on or after January 1, 1996." Thus, Southwest was acting as an agent of the government in collecting a tax that it had every expectation would be reenacted, as it had been on several previous occasions. *See*

8

*Kaucky,* 109 F.3d at 368.

Citing *Enochs v. Williams Packing & Navigation Co.,* appellants contend that, Section 7422 notwithstanding, they may sue Southwest because Southwest lacked a "colorable basis" for collecting the anticipated excise tax. 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). The Supreme Court in *Enochs* acknowledged a limited exception to 26 U.S.C. § 7421, which prohibits the courts from issuing injunctions against the collection of taxes. *See Miller v. Standard Nut Margarine Co.,* 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422 (1932). Under the *Enochs* exception, a taxpayer can obtain an injunction against the collection of taxes if it is "clear that under no circumstances could the Government ultimately prevail ..." and equity jurisdiction otherwise exists. *Enochs,* 370 U.S. at 6-7, 82 S.Ct. at 1128-29. The *Enochs* exception, however, has never been applied to allow a taxpayer to sue a private tax collector for the refund of erroneously collected taxes.[9] We need not decide whether the *Enochs* exception loosens the strictures of Section 7422; *Enochs* is not satisifed in this case because Southwest was acting with colorable authority when it collected the tax. *See Kaucky,* 109 F.3d at 369. Appellants argue that "[n]either the IRS nor Southwest Airlines could conceivably

_____

[9]To allow an exception to Section 7422 based on a lack of a colorable basis, especially if evaluated at the time suit is filed, would open Pandora's box. Plaintiffs, in search of common-law damages in addition to a tax refund, would have strong incentives to attempt to bypass the normal administrative tax refund process. Such an exception would allow taxpayers to seek a judicial resolution of whether a collected tax was colorable before challenging the tax through the administrative process provided by the IRS.

prove that Southwest Airlines properly collected the "excise taxes' in issue." Although it is now apparent that passengers who paid the excise tax in 1995 for travel in 1996 are entitled to a refund from the IRS, that ex post knowledge does not establish that Southwest lacked a colorable basis for collecting the tax. The issue is whether Southwest had a colorable basis to collect the tax at the time.

Although the collection may ultimately have been erroneous, the Internal Revenue Code provides the exclusive remedy for the erroneous or illegal collection of taxes: The taxpayer may file an administrative claim for a refund with the IRS. If the IRS does not return the erroneously or illegally collected tax, the taxpayer may then resort to the courts. But under Section 7422, the proper defendant in such a suit is the United States, not Southwest. The exclusive remedy provided by the Internal Revenue Code thus preempts the appellants' state-law claims against a private entity.[10]

### III.

Appellants also ask this court to hold that 26 U.S.C. § 6415(c) creates a private cause of action for the return of the erroneously collected amounts. That section provides that if a private collector of excise taxes "make[s] an overcollection of such tax, such person shall, upon proper application, refund such

_____

[10]Because we conclude that appellants' claims are precluded by 26 U.S.C. § 7422, we need not determine the propriety of the district court's conclusion that these claims are preempted by the Airline Deregulation Act.

10

overcollection to the person entitled thereto." 26 U.S.C. § 6415(c). Appellants claim that the plain language of this statute creates a federal right for their benefit, which they are entitled to enforce in a private cause of action in state or federal court against Southwest. We disagree.

As an initial matter, Section 6415(c) may not even apply to the sort of refund sought by the appellants in this case. *See Kaucky,* 109 F.3d at 370 (citing *AT & T,* 428 F.Supp. at 1304-05 and *Lehman v. USAIR Group, Inc.,* 930 F.Supp. 912, 915 (S.D.N.Y.1996)). Section 6415(c) on its face is limited to "overcollection" of excise taxes, which has historically been distinguished from "illegal" or "erroneous" collection under Section 7422. Early Treasury regulations explained that "overcollection" referred only to cases in which "an excess amount [was] collected or paid" "as a result of some clerical or mechanical error." *See* Treas. Reg. 43, art. 65 (1921). The traditional distinction between taxes collected as the result of a mechanical or clerical error and taxes collected because of an error of law makes sense. The IRS has no interest in taxes collected purely as a result of mechanical or clerical error and hence need not be involved in the refund decision. If excise taxes are collected as the result of a legal error, however, the IRS's interest in being involved in the refund decision is apparent. In the case of a legal error, the private tax collector would also risk being unable to recover the amounts refunded if the IRS determined the amount in fact was owed. *See AT & T,* 428 F.Supp. at 1306.

11

Of course, in this case, there is no dispute that the taxes were not ultimately owed. But if Section 6415(c) creates a right of action and applies to collections due to an error of law, as the appellants suggest, there is no principle by which the right would be limited to cases in which the tax was clearly not owed. Under appellants' interpretation, Section 6415(c) would allow any taxpayer to challenge any excise tax in court without first complaining to the IRS. If, for example, the appellants alleged that Southwest had misinterpreted the statute and as a result collected taxes erroneously, nothing would prevent them from seeking a refund in court before seeking an administrative resolution through the IRS. No rational basis exists for giving excise taxpayers special access to the courts that is denied all other taxpayers under Section 7422. *See AT & T,* 428 F.Supp. at 1304.

Even if Section 6415(c) does apply in this case, it does not create a private right of action enforceable in federal district court. No court appears to have recognized an implied private cause of action under Section 6415(c), and with good reason. *See Kaucky,* 109 F.3d at 370; *AT & T,* 428 F.Supp. at 1305; *Lehman*, 930 F.Supp. at 915. In evaluating whether a federal statute creates an implied cause of action, this circuit has applied the four factors set forth by the Supreme Court in *Cort v. Ash:* (1) whether the statute creates a federal right or "especial benefit" for a class of which plaintiffs are members; (2) whether there is any indication of legislative intent, explicit or implicit, to create

12

a private cause of action; (3) whether implying a private cause of action would be consistent with the purpose of the legislative scheme; and (4) whether the cause of action urged by the plaintiff is one traditionally relegated to state law. 422 U.S. 66, 78-79, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). In *Touche Ross & Co. v. Redington,* the Supreme Court explained that congressional intent is the touchstone for determining whether a federal statute creates a private right of action. 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979); *see also Louisiana Landmarks Soc'y, Inc. v. City of New Orleans,* 85 F.3d 1119, 1123 (5th Cir.1996) (citations omitted). This circuit has recognized a "presumption that Congress did not intend to create a private right of action." *Louisiana Landmarks,* 85 F.3d at 1123 (citation and internal quotation marks omitted). Appellants "bear[ ] the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Id.* (citations and internal quotation marks omitted). They have not met that burden.

Nothing indicates that Congress intended Section 6415(c) to create an exception to Section 7422 that would allow excise taxpayers to seek relief from the courts in the first instance. Congress's failure even to hint that it intended to allow excise taxpayers to sue private tax collectors directly for refunds, combined with Section 7422's express bar on tax refund suits against a defendant other than the United States, compels the conclusion that Congress did not intend to provide a private

13

remedy.  *See Kaucky,* 109 F.3d at 370 ("[T]here is ... no indication that Congress would have wanted the courts to entertain such suits despite the absence of express authorization.").

The third *Cort v. Ash* factor is particularly salient on the issue of congressional intent.  The structure of the Internal Revenue Code shows that Congress intended the courts to play a role only after the IRS has been given an opportunity to resolve the taxpayer's claims.  We have held that the "existence of [an] administrative scheme of enforcement is strong evidence that Congress intended the administrative remedy to be exclusive." *Till v. Unifirst Federal Sav. & Loan Ass'n,* 653 F.2d 152, 160 (5th Cir.1981).  "Indeed, it is clear under the maxim—*expressio unius est exclusio alterius*—that a pervasive remedial scheme provided by Congress is an indication there was no intent to provide an additional private remedy."  *Id.*

Section 6415(c) is part of a scheme set up by Congress by which taxpayers can obtain refunds from the IRS.  *See AT & T,* 428 F.Supp. at 1305 ("[T]he overall structure of the refund provisions of the Code negates plaintiffs' efforts to seek a tax refund from defendants.").  To recognize a private cause of action against a nongovernmental tax collector under Section 6415(c) would be inconsistent with that scheme.

Appellants rely heavily on the word "shall" in 26 U.S.C. § 6415(c), which provides that a private tax collector "shall, upon proper application, refund such overcollection to the person entitled thereto."  They argue that "shall" is a mandatory rather

14

than a permissive term and that this fact alone indicates that Congress intended to make refunds by private tax collecting agents mandatory. But courts do not always construe "shall" as mandatory. *See, e.g., Board of Governors of the Federal Reserve Sys. v. DLG Fin. Corp.,* 29 F.3d 993, 1001 (5th Cir.1994), *cert. dismissed,* --- U.S. ----, 115 S.Ct. 1085, 130 L.Ed.2d 1055 (1995). Moreover, we are especially reluctant to infer a private cause of action from Congress's use of "shall" in Section 6415(c) when another component of the legislative scheme, Section 7422, indicates that an aggrieved taxpayer's remedy lies solely in a proceeding against the United States. *See* 3 NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 57.06, at 20 (5th ed. 1992) ("[I]f the particular provision in question is a part of a general legislative scheme, a consideration of the entire scheme together may make the particular provision clear. If the construction, mandatory or directory, would produce conflict with other statutes, the opposite ruling would ordinarily be adopted.").

Other than their heavy reliance on the statute's use of the phrase "shall ... refund," appellants merely point to the absence of evidence that Congress did not intend to create a private right of action. This is insufficient to overcome this circuit's presumption against implying causes of action.

IV.

Holding that appellants' state-law claims are precluded by Section 7422 does not leave consumers at the mercy of the airlines. Consumers can seek a refund of any erroneously collected excise

15

taxes from the IRS. We recognize that this may inconvenience taxpayers. As a practical matter, however, many taxpayers would have been far more inconvenienced if Southwest had failed to collect the tax and it had been renewed as expected, especially those taxpayers who learned about their tax deficiencies at the departure gate.

Federal law provides an additional protection to consumers. The Airline Deregulation Act gives the Secretary of Transportation authority to investigate an airline's unfair or deceptive acts or practices or unfair methods of competition. *See* 49 U.S.C. § 41713. Upon discovering such an act or practice, the Secretary may issue cease-and-desist orders or levy civil sanctions against an offending airline. *Id.; see also American Airlines, Inc. v. Wolens,* 513 U.S. 219, 228 n. 4, 115 S.Ct. 817, 823 n. 4, 130 L.Ed.2d 715 (1995) (citations omitted). We do not suggest that such an action would be appropriate against Southwest in this case, only that the law provides another protection against the airlines engaging in the mischief prophesied by the appellants.

For the foregoing reasons, the summary judgment of the district court is AFFIRMED.