151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Elmore J. KELLY, Defendant-Appellant.
 No. 97-2660.
 United States Court of Appeals, Seventh Circuit.
 Argued June 9, 1998.
Decided June 18, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 96 CR 20067.
 Before Hon. RICHARD A. POSNER, Chief Judge, Hon. RICHARD D. CUDAHY, Hon. JESSE E. ESCHBACH, Circuit Judges.
 ORDER
 BAKER, Judge.
 
 
 1
 Elmore J. Kelly pleaded guilty to one count of conspiracy to distribute and possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(I), 846, and was sentenced to 210 months' imprisonment. Kelly appeals, arguing that the government manipulated his sentence by making repeated controlled buys from him in order to increase the amount of drugs involved, and that the 100:1 sentencing structure for crack compared to other forms of cocaine is unconstitutional. We affirm.
 
 I. FACTS
 
 2
 In the summer of 1996 agents from the Drug Enforcement Administration and the Kankakee Area Metropolitan Enforcement Group (KAMEG) began "Operation Snowplow," an investigation of the four primary drug distribution networks in Kankakee, Illinois. Kelly was involved with several other individuals in one of these networks, which had been distributing crack cocaine since the middle of 1994. Kelly and his co-conspirators distributed the crack from several locations in Kankakee, including two apartment buildings. The government agents believed that Kelly was the organizer or leader of the drug distribution network. Drug customers contacted Kelly through his pager, and he either personally sold them crack, or approved transactions and directed the customers to locations where crack could be purchased from one of his co-conspirators.
 
 
 3
 Through the use of informants, agents arranged numerous controlled purchases of crack from members of the conspiracy. Two controlled purchases of crack were made directly from Kelly. On September 12, 1996, a cooperating individual purchased 28.5 grams of crack directly from Kelly and on November 8, 1996, Lake Keys and Diana Saulberry, at the instructions of enforcement agents, purchased 26.8 grams of crack from Kelly.
 
 
 4
 Keys and Saulberry informed agents that from June 1994 to October 1996, they had jointly purchased four to five ounces of crack per month from Kelly. Keys testified at Kelly's sentencing hearing that he had purchased, in total, approximately 150 ounces (4,252.5 grams) of crack from Kelly. Agents also interviewed Inez Green, who estimated that she had purchased approximately 680.4 grams of crack from Kelly in the past two years.
 
 
 5
 In January 1997, Kelly and numerous other members of the drug conspiracy were arrested. Pursuant to a written plea agreement, Kelly pleaded guilty to the conspiracy charge and the government agreed to dismiss two other counts against Kelly relating to his sale of drugs on September 12 and November 8, 1996. The Presentence Investigation Report (PSR) stated that Kelly was accountable for 5,666 grams of crack, which most significantly included the 4,252.5 grams reported by Keys and Saulberry. The 5,666 grams also included the smaller amounts reported by Green and the amounts from the controlled buys involving Kelly and his co-conspirators. Because the total amount of crack exceeded 1.5 kilograms, Kelly had an initial base offense level of 38, reduced by three levels to 35 due to his acceptance of responsibility. U.S.S.G. §§ 2D1.1(c)(1), 3E1.1. The PSR also recommended that Kelly's base offense level be increased by four levels because of his role as a leader or organizer of the conspiracy. U.S.S.G. § 3B1.1.
 
 
 6
 At sentencing, Kelly did not challenge the PSR's attribution of the more than 5.6 kilograms of crack to him. However, he objected to the PSR's characterization of him as a leader or organizer of the conspiracy. Although there was some evidence that Kelly may have been the organizer of the conspiracy, the district court found that the weight of the evidence showed that Kelly was not the leader but was merely a seller of the crack to other individuals. Accordingly, the district court sustained the objection to the PSR's proposed enhancement for being a leader or organizer. With the exception of the paragraph stating that Kelly was a leader, the district court adopted the factual findings of the PSR. The court found that with a Criminal History Category of III and a total base offense level of 35, Kelly had a sentencing range of 210 to 262 months' imprisonment. The district court sentenced him at the bottom of this range to 210 months' imprisonment.
 
 II. DISCUSSION
 A. Sentence Manipulation
 
 7
 Kelly argues that the government unfairly manipulated his sentence by making repeated buys from him in order to increase his sentence. Kelly asserts that he should have been held accountable for only the 56.5 grams of crack from the two controlled buys directly from him, instead of 5,666 grams.
 
 
 8
 Kelly appears to argue that, in lieu of arresting him in November, law enforcement officials continued to make controlled buys from him before arresting him in January 1997, in order to effectuate a higher sentencing range. However, not a single controlled drug purchase from Kelly or any of his co-conspirators was made after November 8, 1996. Therefore, no sentencing manipulation took place. Kelly also asserts, for the first time in his reply brief, that the government manipulated his sentence by making the second controlled buy from him on November 8. Because Kelly did not raise this issue until his reply brief, it is waived. James v. Sheahan, 137 F.3d 1003, 1008 (7th Cir.1998). Further, even if this court were to consider this issue, the addition of the 26.8 grams of crack from the November 8 buy would not have affected his sentence because the amount of drugs attributable to him was already well above the 1.5 kilograms that determined his initial base offense level of 38. U.S.S.G. § 2D1.1(c)(1).
 
 
 9
 B. Amount of Drugs Attributable to Kelly and Particularized Findings
 
 
 10
 As part of Kelly's discussion of government manipulation, he argues that the district court should have held him accountable for only 56.5 grams of crack and that the court failed to make particularized findings regarding the amount of drugs for which he was responsible. The amount of drugs attributable to a defendant is a factual determination that this court normally reviews for clear error. United States v. Singleton, 125 F.3d 1097, 1108 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 898, --- L.Ed.2d ---- (1998). However, because Kelly failed to raise the drug quantity computation before the district court at sentencing, he waived this issue. United States v. Beltran, 109 F.3d 365, 370 n. 1 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997). This court reviews "waived issues for plain error and will reverse only if an error is so egregious as to constitute a miscarriage of justice." Id.
 
 
 11
 The district court adopted the PSR's finding that Kelly was accountable for the entire 5,666 grams of crack that the conspiracy involved. Although Kelly challenged the PSR's conclusion that he was a leader or organizer, he did not challenge the amount of drugs attributable to him. Kelly explicitly stated at the sentencing hearing that he was not contesting the amount of crack. Kelly apparently premises his appeal on his belief that the PSR is tainted by the district court's finding that he was not a leader, but merely a seller.
 
 
 12
 "As long as the information is reliable, the district court is entitled to rely on the PSR, as it did here. When the district court adopts the PSR's findings, the defendant must offer more than a bare denial of its factual allegations to mount a successful challenge." United States v. Hall, 109 F.3d 1227, 1233 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 153, 139 L.Ed.2d 99 (1997); see United States v. Taylor, 72 F.3d 533, 547 (7th Cir.1995). Further, Federal Rule of Criminal Procedure 32(c)(1) requires a district court to make written findings on only controverted matters. Because Kelly failed to challenge the PSR's determination that he was accountable for 5,666 grams of crack, and he does not offer any evidence to oppose that finding, this court may affirm if the findings are supported by the record, even if the district court did not make explicit findings. United States v. Wilson, 134 F.3d 855, 870-71 (7th Cir.1998); Hall, 109 F.3d at 1234. The record indeed does support Kelly's accountability for 5,666 grams of crack. Of significant importance is the fact that Keys and Saulberry informed law enforcement officials that from June 1994 to October 1996, they had jointly purchased four to five ounces of crack per month from Kelly. Keys also testified at Kelly's sentencing hearing that he had purchased approximately 150 ounces (4,252.5 grams) of crack from Kelly. This amount of crack alone is more than sufficient to assess Kelly an initial base offense level of 38. U.S.S.G. § 2D1.1(c)(1). Therefore, the district court did not commit plain error in determining Kelly's relevant conduct when it found that he had an initial base offense level of 38, reduced to 35 due to his acceptance of responsibility.
 
 C. 100:1 Crack/Cocaine Sentencing Ratio
 
 13
 Kelly also raises the issue that the sentencing enhancement for crack compared to other forms of cocaine is unconstitutional. However, we have repeatedly held that the crack-cocaine sentencing structure is not unconstitutional. United States v. Westbrook, 125 F.3d 996, 1010 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997). Therefore, Kelly is not entitled to relief on this issue.
 
 
 14
 At oral argument; Kelly also asserted that the district court failed to make a finding as to whether the drugs were crack or some other form of cocaine base. United States v. Adams, 125 F.3d 586, 590 (7th Cir.1997) ("[a]ll 'cocaine base' is not 'crack" '). This argument is waived because it was not included in the briefs and was raised for the first time at oral argument. Ricci v. Arlington Heights, Ill., 116 F.3d 288, 292 (7th Cir.1997).
 
 III. CONCLUSION
 
 15
 The government did not engage in unlawful sentence manipulation. The district court did not plainly err in finding that the entire amount of drugs was attributable to Kelly and the district court's finding is supported by the record.
 
 
 16
 AFFIRMED.