UNITED STATES of America,
Plaintiff,

v.

Frederick WILLIAMS, Defendant.

No. 03–CR–92.

United States District Court,
E.D. Wisconsin.

Jan. 15, 2004.

Nelson Phillips, III, Milwaukee, WI, for Plaintiff.

Jeffrey W. Jensen, Milwaukee, WI, for Defendant.

## MEMORANDUM

ADELMAN, District Judge.

Defendant Frederick Williams pled guilty to use of a telephone to facilitate the distribution of cocaine base, contrary to 21 U.S.C. § 843(b). A pre-sentence report was prepared in anticipation of sentencing, and it calculated defendant's offense level as 27. The base offense level was determined to be 32 under U.S.S.G. § 2D1.6(a) and 2D1.1(c).[1] The PSR then subtracted

---

1. Section 2D1.6, which applies to § 843(b) offenses, instructs the court to use the offense level applicable to the underlying offense.

two levels under § 2D1.1(b)(6) because defendant qualified for the "safety valve" reduction,[2] and three levels under § 3E1.1 because defendant timely accepted responsibility for the offense. Because defendant had no prior record, his criminal history category was I. Thus, the PSR recommended an imprisonment range of 70–87 months under the guidelines. However, because § 843(b) carries a statutory maximum penalty of four years, the guideline range was reduced to 48 months under U.S.S.G. § 5G1.1(a).

The PSR recommended no offense level adjustment based on defendant's role in the offense. Defendant objected to this determination, arguing that he should receive a four level reduction under U.S.S.G. § 3B1.2(a) based on his "minimal" role in the offense. Such a reduction would have reduced defendant's guideline range below the statutory maximum penalty. After reviewing the parties' written submissions and hearing the arguments of counsel, I concluded that defendant qualified for a two level reduction as a "minor participant" under § 3B1.2(b). In this memorandum I explain the basis for my decision.

## I.

The facts of the case were not in dispute. A confidential source ("CS") working with the government, who was a friend or acquaintance of defendant's brother, was seeking to make a drug purchase under the supervision of an FBI agent. The CS was introduced to defendant by defendant's brother. Aware that Anthony Smith was a drug dealer in the neighborhood, defendant contacted Smith on behalf of the CS. Defendant and the CS then arranged a transaction whereby the CS would purchase two ounces of crack from Smith for $2000. Defendant would receive $20 for "middling" the deal.

On February 16, 2000 at about 2:25 p.m., the CS met with the FBI agent with whom he was working and advised that he was being paged by defendant. The CS then called defendant while being monitored by the agent. Defendant told the CS that he had just spoken with Smith. The CS told defendant to make sure that Smith had two ounces "hard." It was agreed that the transaction would occur at defendant's house between 3:15 and 3:30 p.m.

The CS arrived at defendant's house at about 3:12 p.m. He went inside and encountered defendant, his sister and his nephew. Smith was not then present. Defendant then called Smith several times to advise that the CS was there and to inquire as to Smith's whereabouts. Smith advised that he was on his way.

Smith arrived a short time later with defendant's brother. Smith gave the drugs to the CS, and the CS gave $2000 to Smith. The CS and Smith both counted the money. The CS also gave defendant $20. There is no indication that defendant ever handled the drugs or the buy money.

Thus, in the present case, the offense level was computed under § 2D1.1. The base level was 32 because the offense involved 53.983 grams of cocaine base.

**2.** Section 2D1.1(b)(6) provides for a two level reduction if the defendant satisfies the criteria set forth in § 5C1.2: (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise; and (5) not later than the time of the sentencing hearing, the defendant truthfully provided to the Government all information and evidence the defendant had concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.

Defendant indicated that he was abusing crack cocaine at the time and intended to use the $20 to buy drugs.

The CS left the residence at about 3:53 p.m. and met the agents. He gave the drugs to the agents, and they were tested and found to be crack cocaine, with a weight of 53.983 grams.

## II.

### A.

U.S.S.G. § 3B1.2 prescribes various offense level reductions based on the defendant's "mitigating role" in the offense. A reduction may be granted in cases in which more than one "participant" was involved in committing the offense. U.S.S.G. § 3B1.2 cmt. n. 2. "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." U.S.S.G. § 3B1.1 cmt n. 1.

Section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n. 3(A). Under § 3B1.2(a), the defendant's offense level is reduced by four if he was "a minimal participant in any criminal activity." His offense level is reduced by two under § 3B1.2(b) if he was a "minor participant" in the crime. In cases falling between the two, the court may reduce by three levels. U.S.S.G. § 3B1.2.

"The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G.

§ 3B1.2 cmt. n. 3(C). The application notes provide some guidance in making this determination.

> Application note 4 indicates that the "minimal participant" adjustment applies to defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

U.S.S.G. § 3B1.2 cmt. n. 4.

Note 5 indicates that a "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n. 5.

■ The defendant bears the burden of showing by a preponderance of the evidence that he is entitled to a reduction under § 3B1.2. *United States v. Hunte*, 196 F.3d 687, 693 (7th Cir.1999).

### B.

Defendant argued that he was entitled to a four level reduction because his role was minimal—he only made phone calls, he never handled the drugs, and he received only $20 for his efforts.

■ The government opposed the reduction. First, it argued that defendant was the only participant involved in the phone conversations. This was incorrect. Smith was also involved in the calls, and he qualified as a participant under U.S.S.G. § 3B1.1 cmt. n. 1.[3] Moreover, "[t]he determination of a defendant's role in the of-

---

**3.** The CS could not be counted as a participant under U.S.S.G. § 3B1.1 cmt. n. 1 be-

cause he was not criminally responsible.

fense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct) ... and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. ch. 3, pt. B, introductory cmt. In the present case, defendant's relevant conduct included the 53 grams of crack Smith sold to the CS.

The involvement of one other participant is sufficient to trigger eligibility under § 3B1.2. *See id.* ("When an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply."). Because more than one participant was involved here, defendant was eligible for a § 3B1.2 reduction.

■ Second, the government noted that defendant was convicted only of use of a communication facility under § 843(b), which carries a four year maximum term of imprisonment, rather than conspiracy to distribute cocaine under 21 U.S.C. § 846, which provides higher statutory penalties. Section 3B1.2 application note 3(B) provides: "If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense." U.S.S.G. § 3B1.2 cmt. n. 3(B).

The government argued that defendant received a break in the charging decision; if he had been charged with conspiracy, he would be sentenced under the applicable guideline range of 70–87 months, without the four year statutory cap. It claimed that defendant was therefore entitled to no further reduction.

On the particular facts of the present case, the argument was unpersuasive. De-

fendant had not "received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct." In fact, his offense level under the guidelines—computed under § 2D1.1 via § 2D1.6—was exactly the same as if he had been convicted of conspiracy. He received the benefit of a lower statutory maximum, but he received no benefit under the guidelines as the result of being charged under § 843(b). Further, the offense of conviction fit the facts of the case well; defendant made phone calls to help arrange a deal between others. He did not receive a significantly reduced charge, as a defendant whose charge was dropped from distribution to mere possession would. *See* § 3B1.2 cmt. n. 3(B).[4] Thus, I concluded as a factual matter that defendant's offense of conviction was not significantly less serious than warranted by his actual criminal conduct.

■ Nor did it matter in this case that defendant was being held "accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which [he] personally was involved." U.S.S.G. § 3B1.2 cmt. n. 3(A). Application notes 3(A) and 3(B) are designed to deal with situations in which the defendant is part of a *larger* conspiracy and yet is held responsible for only part of it. For example, a defendant who serves as a courier for a drug conspiracy that sold 200 kilograms of cocaine, yet himself is held responsible only for the one kilogram he transported, should not ordinarily receive a further reduction under § 3B1.2. As the Seventh Circuit has noted, "It makes no sense to claim that one is a minor participant in one's own conduct." *United States v. Lampkins*, 47 F.3d 175, 181 (7th Cir.1995); *see also United States v. Cruz*, 233 F.3d 492, 493–94 (7th Cir. 2000). Similarly, a defendant whose of-

---

**4.** U.S.S.G. § 2D2.1 provides base offense levels of 4, 6 and 8 for mere possession. U.S.S.G. § 2D1.1 prescribes much higher base levels for distribution offenses.

fense of conviction limits his exposure under the guidelines to less than what would otherwise be applicable under § 1B1.3 should not ordinarily receive a further reduction under § 3B1.2.[5]

The introductory commentary to chapter 3, part B provides further insight on why this is so. According to that commentary, reductions under § 3B1.2 are to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), not just the elements and acts cited in the count of conviction. But if certain relevant conduct is excluded, a further reduction under § 3B1.2 may not be proper. As the court explained in *United States v. Olibrices,* 979 F.2d 1557, 1560 (D.C.Cir.1992), it would be illogical to establish the base offense level based on a smaller scheme yet determine a § 3B1.2 reduction based on the defendant's role in the larger conspiracy.

In this case, however, there was no larger conspiracy. Defendant was held responsible for the same 53 grams of crack as Smith. Nothing was excluded from his relevant conduct determination, thus there was no reason to presume that he was not entitled to consideration under § 3B1.2.

Ultimately conceding that the § 3B1.2 determination must be made based on relevant conduct rather than the specific offense of conviction, the government argued that defendant was not entitled to the reduction on these facts because he was integral to setting up this drug transaction. The government relied on *United States v. Beltran,* 109 F.3d 365 (7th Cir.1997), where the court affirmed the denial of a § 3B1.2 reduction. However, *Beltran* was distinguishable.

First, the *Beltran* court was reviewing the denial of a § 3B1.2 reduction by the district judge. Because this determination is fact-dependent there is a "correspondingly limited appellate role." *Id.* at 370.

Second, the facts in *Beltran* differed considerably from those here. In *Beltran,* a cooperating witness ("CW") had agreed to purchase drugs from a dealer named Salgado. The following day, at the pre-arranged time, the CW arrived at Selgado's house and knocked on the door. Beltran answered, told the CW that Salgado had just left, and invited the CW inside. After telling the CW that he would telephone Salgado, Beltran placed a brief call and hung up. A short time later the phone rang and Beltran engaged in a short conversation with the caller, during which he described both the CW and his car. After Beltran completed the call, his sister, Mayra, also placed a brief call and received a phone call back. When she completed her call she told her brother that Salgado said to give the CW anything he wanted, and she told the CW that he could call Salgado later. Beltran asked the CW what he wanted and was told a "quarter." Beltran walked to the kitchen and returned a short time later with a brown paper bag containing 254 grams of 80% pure cocaine. *Id.* at 367.

The court of appeals affirmed the denial of a § 3B1.2 reduction on these facts, stating:

> While a defendant's lack of knowledge or understanding of the structure of an enterprise or the activity of others is indicative of a minimal role, a defendant is not eligible for the reduction just by being at the end of the chain of distribution, by being a courier, or by serving as a go-between rather than a principal. In this respect, because he was only charged and held accountable for the one transaction in which he admittedly was involved, Beltran played an integral

---

**5.** There may be situations in which the defendant can show that he was a minor participant regarding the drugs he personally carried. For example, he may show that others played a significantly larger role in completing that particular shipment.

and significant rather than a minor role in the offense for which he was held accountable. The government did not charge Beltran for the larger conspiracy or for other transactions. Nor did the court consider any larger conspiracy or other transactions as relevant conduct. Beltran's minor role in the larger conspiracy already was reflected in the minor nature of the charges against him. With regard to the specific charges at issue, the one transaction and the conspiracy to commit that one transaction, however, Beltran played a significant role. Thus, he is not entitled to a further reduction. Beltran was charged only with distributing a quarter kilo, approximately one-half pound, which he sold to CW, the government witness, for $6500. This was a significant sale and its significance would not have escaped Beltran, who the court noted (based on the PSR's account of his background, education, and occupation) was an intelligent man.

*Id.* at 370–71 (internal citations and quote marks omitted).

In the present case, no larger conspiracy was excluded in computing defendant's offense level. Moreover, defendant's role in the single transaction in which he was involved was far less significant than Beltran's. Defendant never handled drugs or money. He did not act as Smith's agent at Smith's "stash house." He received only $20 compared to the $2000 sale price, while Beltran admitted that he got $1000 out of the $6500 sale price. Thus, *Beltran* did not control here.

Distinguishable for similar reasons were *United States v. Cea,* 963 F.2d 1027 (7th Cir.1992) and *United States v. Brick,* 905 F.2d 1092 (7th Cir.1990), cases in which the court affirmed the denial of § 3B1.2 reductions to defendants who "middled" drug deals. Aside from the fact that these cases involved appeals from denials of a § 3B1.2 reduction, which were reviewable for clear error only, the relevant facts were very different from those in the present case.

In *Cea,* the defendant agreed to purchase twenty kilograms of cocaine from a cooperating witness, but did not have the money himself; thus, he located someone to provide money for the transaction. The defendant then engaged in numerous conversations with the cooperator and undercover law enforcement concerning the logistics of the deal. 963 F.2d at 1028 The district court found that, "No one could have tried any harder than Cea to culminate the deal." *Id.* at 1033. Further, Cea was to physically receive the drugs himself. *Id.* at 1029. In this case, conversely, this was not defendant's deal, and he never handled any drugs or money.

In *Brick,* the defendant was involved in three transactions, two of which he arranged by phone, and one of which he actually conducted; he was present for the other two. The court rejected a § 3B1.2 reduction, despite the defendant's argument that he did not supply the drugs or money, and his profit was $330 compared to the $2800 his co-defendant made. 905 F.2d at 1095. Here, defendant did not conduct any transactions himself, and his profit was minuscule in comparison.[6]

Considering all of the facts and circumstances, I concluded that defendant was

---

**6.** Also distinguishable is *United States v. Corral,* 324 F.3d 866, 874 (7th Cir.2003), in which the court affirmed denial of a § 3B1.2 reduction to a defendant who argued that his role was minor because he was not a party to the drug transaction and served only as a messenger to let the dealer know the drugs were ready for pick up. The district court rejected his argument on the facts, finding that the defendant either resided at or worked out of an apartment the dealer used as a stash house for his drug business. *Id.*

substantially less culpable than the average participant in this criminal activity. In this case, the average participants would be Smith and the CS, as they actually engaged in the deal, providing drugs and money. (As noted, the CS was excluded as a participant under the guidelines.) Defendant only made phone calls to help arrange the transaction; he provided neither drugs nor money; his take was just $20.[7]

Moreover, defendant was not actively seeking to engage in drug transactions, on behalf of Smith or anyone else; rather, it was the relationship between the CS and defendant's brother that brought defendant into contact with the CS. It was the CS who broached the subject of a drug transaction. Defendant did not initiate it. Only after the CS made an inquiry about drugs did defendant contact Smith, whom he knew to be a drug dealer in the neighborhood at the time.

▉▉▉ While the government argued that this transaction would not have occurred without defendant's involvement, there is no "but-for" test under § 3B1.2. The focus is on the relative culpability of the defendant compared to the other participants in the offense, *see United States v. Scroggins*, 939 F.2d 416, 423 n. 9 (7th Cir.1991), not on whether the defendant was an essential link in the chain of causation, *see Hunte*, 196 F.3d at 694 (providing examples of minimal participants who nevertheless "played a role necessary to the accomplishment of the crime"). It is true that "when each participant was an essential component in the crime, despite varying levels of involvement in its commission, the fact that other members of the criminal enterprise were more involved does not without more entitle a defendant to a reduction under § 3B1.2." *United States v. Adams*, 286 F.Supp.2d 1017, 1019 (E.D.Wis.2003) (citing *United States v. Castillo*, 148 F.3d 770, 776 (7th Cir.1998)). But this does not mean that only nonessential participants may ever receive a reduction. *Hunte*, 196 F.3d at 694 (stating that " 'minor' is not necessarily synonymous with 'nonessential' "). It simply means that the court does not grant a reduction based solely on the defendant's assignment in the scheme. *See Adams*, 286 F.Supp.2d at 1019 (noting that participant in bank robbery should not receive reduction just because he is lookout or get away driver rather than "stick up" man).[8]

Thus, for these reasons, I concluded that a § 3B1.2 reduction was appropriate on these facts.[9]

7. I recognized that lack of profit alone does not entitle a defendant to a § 3B1.2 reduction. *See Brick*, 905 F.2d at 1095 ("The importance of an individual's role in a drug offense should not be based solely on the amount of that individual's pecuniary gain."). However, this was certainly a factor I could consider. *See Hunte*, 196 F.3d at 694 (stating that while "financial gain should not be the only, or even the dominant, factor in determining culpability under § 3B1.2," it is a consideration).

8. This is not to suggest that the court may not consider whether the defendant contributed anything to the success of the scheme. *See Adams*, 286 F.Supp.2d at 1019 (granting three level reduction to defendant whose "presence seemed to add little or nothing to the commission of the offense"). This may be a relevant factor in comparing the defendant's culpability to that of the other participants who did perform essential acts. *See Hunte*, 196 F.3d at 694 (noting that while defendant need not show she was nonessential to show minor role, the fact that she "provided nothing 'necessary' or 'essential' to the operation" was a consideration).

9. The Seventh Circuit has stated in dicta that a " 'person who directs a buyer to a seller cannot be considered a minor participant because that person also plays an important role in the distribution of the drugs.' " *Cea*, 963 F.2d at 1033 (quoting *Brick*, 905 F.2d at 1095). However, as noted above, the facts in

The next question was what level of reduction to grant. Defendant could not be considered a minimal participant. He clearly knew and understood what the others involved were doing. *See* U.S.S.G. § 3B1.2 cmt. n. 4. His participation in planning disqualified him from a four level reduction. *See Adams*, 286 F.Supp.2d at 1020. Because defendant brought the CS and Smith together where they otherwise might not have connected, I also concluded that a three level reduction was unwarranted. A two level decrease as a minor participant was appropriate. *See United States v. Christman*, 894 F.2d 339, 341 (9th Cir.1990) (affirming finding that defendant was minor rather than minimal participant where he was convicted of use of telephone in commission of drug offense, rather than drug conspiracy, were evidence showed defendant used phone to negotiate price and quantity of drugs).[10]

### III.

Because defendant received a reduction under § 3B1.2, his base offense level was capped at 30 under § 2D1.1(a)(3).[11] With the two level reductions under § 2D1.1(b)(6) (safety valve) and § 3B1.2(b) (minor role), and the three level reduction under § 3E1.1 (acceptance of responsibility), the final offense level was 23. With a criminal history category of I, the imprisonment range was 46–57 months, although due to the statutory maximum that range was cabined at 46–48 months.

I sentenced defendant to 46 months imprisonment. Other conditions of sentence appear in the judgment.

---

*Cea* and *Brick* were far different than here. Determinations under § 3B1.2 are fact-based and require the district judge to compare the defendant to the other participants in *this* offense, not the "average" participant in *similar* offenses. While defendant did direct the CS to Smith, for the reasons stated, he was substantially less culpable than Smith.

10. Some cases say that the § 3B1.2 reduction should be applied "infrequently." *See, e.g., Corral*, 324 F.3d at 874. However, the Com-

mission has said that only the four level, "minimal role" reduction under § 3B1.2(a) should "be used infrequently." U.S.S.G. § 3B1.2 cmt. n. 4. There is no similar limitation on the "minor role" reduction. *See* U.S.S.G. § cmt. n. 5; *see also Hunte*, 196 F.3d at 694; *Scroggins*, 939 F.2d at 423

11. Section 2D1.1(a)(3) provides that if the defendant receives an adjustment under § 3B1.2 his base offense level based on drug weight is capped at 30.